IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Rodney Prioleau, | C. A. No. 2:05-2331-CWH-RSC |
| Plaintiff, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| John E. Potter, Postmaster General of the United States, United States Postal Service, | |
| Defendant. | |

This employment discrimination action pursuant to the Rehabilitation Act of 1973 (29 U.S.C. § 791, et seq.)[1] is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's summary judgment motion filed on November 30, 2007. 28 U.S.C. § 636(b).

The plaintiff, Rodney Prioleau, sued his former employer Defendant John E. Potter, Postmaster General of the United States, United States Postal Service (USPS) on August 12, 2005, and alleged the defendant violated the Rehabilitation Act when he

---

[1] The Rehabilitation Act provides that no "otherwise qualified individual with a disability" may, solely by reason of such disability, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance, or any program or activity conducted by any executive agency or by the United States Postal Service. Sections 501 and 503 of the Rehabilitation Act (29 U.S.C.A. §§ 791 and 793), and their implementing regulations, extend this protection to employees of federal government agencies.

1

failed to place plaintiff in a job following a disabling assault and fall although he could perform a number of jobs at the USPS. Plaintiff seeks equitable relief and damages.

On November 30, 2007 the defendant filed a summary judgment motion and asserted he is entitled to judgment as a matter of law because it is undisputed that the USPS was unable to place Plaintiff into a position which he was able to perform, with or without accommodation, and Plaintiff failed in his burden to identify any such position. Plaintiff opposed the motion on December 18, 2006, and the defendant filed a reply on December 19, 2006. Oral argument on the motion was had before the undersigned on January 17, 2007. Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, the court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v.

Cattrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party bears the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-89, 106 S.Ct. 1348 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). Unsupported speculation is not enough to withstand a motion for summary judgment. Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. Stone v. University of Md. Medical Sys. Corp., 855 F.2d 167 (4th Cir. 1988).

### REHABILITATION ACT LAW

This case involves alleged employment discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (RHA). The RHA[2] provides that no "otherwise

---

[2] The Americans with Disabilities Act (ADA) and the RHA are very similar. See, e.g., Francis v. Meriden, 129 F.3d 281, 284 n. 4 (2d Cir. 1997). Thus, courts look to case law interpreting

3

qualified individual with a disability" may, solely by reason of such disability, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance, or any program or activity conducted by any executive agency or by the United States Postal Service. Sections 501 and 503 of the RHA, 29 U.S.C. §§ 791 and 793, and their implementing regulations, extend this protection to employees of federal government agencies.

Individuals making claims of disability discrimination bear the burden of first demonstrating that they are disabled. A "disability" means either (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such a impairment. 42 U.S.C. § 12102(2).

Under the RHA, a "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see also 29 C.F.R. § 1630.2(m).

---

interpreting one statute to assist them in interpreting the other. Id.; Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995) (explaining that "the substantive standards for determining liability are the same" under both the RHA and the ADA). the other.

4

Under RHA regulations in effect in 2001 when this action arose, an incumbent federal employee who became unable to perform the duties of his current job due to disability was entitled to reassignment as follows:

> Reassignment. When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade or level, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program.

29 C.F.R. § 1614.203(g) (2001).

## FACTS

The facts, either undisputed or as forecast by the plaintiff's evidence and all reasonable inferences therefrom taken in the light most favorable to the plaintiff, the party opposing summary judgment, are as follows. See, Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

Since 1981, Plaintiff has been employed as a Mailhandler, Grade level 4, at the Charleston, South Carolina Processing and Distribution Center (P&DC). Mailhandlers must load and offload trucks and working equipment, distribute mail that requires no scheme, cancel mail, work damaged mail, face letters, and transport mail.

On February 10, 2000, Plaintiff was kicked in the buttocks by a female co-worker. The co-worker was placed on administrative leave but some months later she was returned to work at the P&DC. After being harassed and humiliated by other co-workers, Plaintiff left the P&DC facility in April 2000. Dr. John Abbess admitted him to an outpatient mental health program and diagnosed him with post-traumatic stress disorder, anxiety, and depression.

Plaintiff applied for and received workers' compensation payments based upon a psychological disability from the Office of Workers Compensation, Department of Labor ("OWCP"), which administers the Federal Employees' Compensation Act ("FECA"). These payments were awarded to him retroactive to February 10, 2000, when he was kicked, and Plaintiff is still receiving regular FECA payments.[3]

In August 2000, Plaintiff was assigned to limited duty work performing janitorial duties at the East Bay Station, Charleston, South Carolina. However, on September 6, 2000, Plaintiff fell off a dock there and injured himself.

Plaintiff was paid OWCP benefits from February 10, 2000, through September 9, 2000, based upon his disability resulting

---

[3] The payments equal 75% of the difference between what he was earning and what OWCP estimates he should be able to earn in the private sector, they are tax free, and he receives cost of living increases.

6

from his being kicked in the buttocks. He was found to be disabled as a result of his injuries from the fall, and he made another OWCP claim. That claim was approved and he was paid under that claim from September of 2000 until July 14, 2001, when his doctor released him to return to work with some restrictions. At that point, Plaintiff relied upon his initial psychological disability claim and has continued receiving compensation payments under that claim.

On October 10, 2000, the defendant made Plaintiff a limited duty offer to be a Modified Mailhandler at the East Bay Station. A Modified Mailhandler (1) makes or assists in making minor maintenance repairs to building and equipment; (2) performs general laboring duties such as uncrating and assembling furniture and fixtures using bolts and screws for assembly, loading and unloading supplies and equipment; and (3) performs janitorial duties such as cleaning, scrubbing, waxing, and polishing floors; washes walls and ceilings; dusts furniture and fixtures; cleans hardware and toilet fixtures; washes windows, cares for lawns and shrubs; cleans sidewalks and driveways and removes ashes, snow and ice. Plaintiff declined that job offer because he believed it would violate the medical restriction, that he not reach above his shoulder.

Next, Plaintiff was assigned to Peter Hay, a Maintenance supervisor, for the purpose of finding a position to get him back

to work.[4] Hays and Plaintiff discussed proposals for administrative work at the P&DC but Plaintiff declined because his attacker worked there and his physician did not want him to work there for that reason.

Hays and Plaintiff also explored the option of assigning Plaintiff to work with the damaged mail, his previous job, at the James Island station but transportation problems prevented this. They also considered creating a position at the Air Cargo Facility, but it is located in North Charleston and the duties were rejected by Plaintiff. (Tr. Hay Test, p. P87-93). In sum, the only possibility of work they could come up with was in North Charleston where Plaintiff's doctor indicated that he should not work.

---

[4] Under Rehabilitation Act regulations in effect in 2001 (when this action arose), an incumbent federal employee who became unable to perform the duties of his current job due to disability was entitled to reassignment as follows:

> Reassignment. When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade or level, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program.

29 CFR § 1614.203(g) (2001).

8

Then, following a March 2001 Functional Capacity Assessment, Dr. John Johnson released Plaintiff to work full-time with a permanent restriction not to lift over 10 pounds. On March 29, 2001, the USPS offered Plaintiff a limited duty Modified Mailhandler position at the Post Office in Mt. Pleasant. Management told Plaintiff that the position had been structured so that he would not have to violate any of the medical restrictions placed on him by his doctors. Plaintiff rejected the job offer in Mount Pleasant for several reasons: 1) Mount Pleasant is an Associate Post Office outside of Plaintiff's district and if he wanted to return to Charleston, he would lose his seniority and have to take a part-time flexible position; 2) the fiancée of the woman who assaulted him lived in that area; and 3) the position was the same custodial work that he had been offered repeatedly. (Prioleau Depo. Pp. 43-44).

A supervisory claims examiner with the OWCP reviewed Plaintiff's reasons for refusing the position in Mount Pleasant and found his reasons acceptable. On August 15, 2001, the OWCP directed the defendant to make Plaintiff another offer but it did not indicate why it agreed with the plaintiff that the Mt. Pleasant job was unacceptable. (Hays Depo. p. 93). USPS Human Relations Specialist Pat Bradshaw sought clarification from the OWCP by asking what part of the last modified position offered was unacceptable. When the USPS did not receive a response from

9

the OWCP, it made no further job offers to Plaintiff. (Tr. Hay Test, pp. 115).

On August 23, 2001, Plaintiff filed a formal administrative complaint alleging that the USPS had discriminated against him on the basis of race (Black), disability (impairments of degenerative disc changes, post-traumatic stress disorder, and generalized anxiety), and reprisal for EEO activity. The alleged discrimination was the March 29, 2001, offer of a job requiring him to perform work which would exceed his medical restrictions.

Ultimately, the Office of Federal Operations at the EEOC overturned a favorable decision and found that 1) Plaintiff was not a qualified individual with a disability 29 CFR §1630.2(m) and 2) Plaintiff had not satisfied his burden under 29 C.F.R. §1614.203(g) when he failed to establish that had the agency done a broader or more thorough search, it would have found a vacant, funded position to which he could have been reassigned. Prioleau v. Potter, Appeal No. 07A40021, 2005 WL 1130135 (May 9, 2005 EEOC). Plaintiff thereafter filed the instant action.

## DISCUSSION

A review of the record and relevant case law reveals that the defendant's motion for summary judgment should be granted and this action ended.

Here, the fact that Plaintiff concedes that there was no job open in the Charleston area in his Level 4 pay range which he

10

could perform is dispositive of the entire case. There is no dispute that the defendant is not legally required to "promote" a person with a disability to accommodate him. Plaintiff argued that he should be offered a Clerk Craft position[5] outside of North Charleston, but all Clerk Craft jobs not located in North Charleston and within Plaintff's commuting range are considered a promotion because they are at Level 5 and 6 pay rate only, rather than at Plaintiff's Level 4 pay rate.

Further the plaintiff agrees that the defendant entered into a prolonged interactive process with the plaintiff to find or restructure a job for him. The plaintiff, however, believes that the defendant should have looked to the plaintiff for clarification in order to offer him yet another restructured job. That contention is simply not enough to sustain this action. There is no free standing actionable duty to engage in an interactive process. Rehling v. City of Chicago, 207 F.3d 1009, 1016 (7th Cir. 2000); Willis v. Conopco, Inc., 108 F.3d 282, 284-286 (11th Cir. 1997). Rather, the employee must at the very least demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee. Id. In any

---

[5] Defendant calls he position which the plaintiff has suggested he should have been offered "Sales/Service and Distribution Associates" positions, which were formerly called "Distribution Clerks" and "Window Clerks".

11

case, if the employer could not reasonably accommodate the plaintiff, it does not matter whether the employer engaged in an interactive process at all.  According to the defendant, there were, and are, no jobs available that could reasonably accommodate Plaintiff, and the plaintiff is unable to contradict that fact.  Whether the USPO tried hard enough to find a position that does not exist is irrelevant to the question presented here: Did the defendant deny the plaintiff an available position which he could perform with or without an accommodation solely on the basis of the plaintiff's disability?  It appears there is no genuine question of fact in that regard.  There simply was no such position and no such unlawful discrimination occurred. Defendant is entitled to summary judgment.

## CONCLUSION

Accordingly, for the aforementioned reason, it is recommended that the defendant's motion for summary judgment be granted and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
March 28, 2007