IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Rodney Prioleau, | ) |
| Plaintiff, | ) Civil Action No.: 2:05-2331-CWH |
| vs. | ) |
| John E. Potter, Postmaster General of the United States, United States Postal Service | ) ORDER |
| Defendant, | ) |

On August 12, 2005, the plaintiff commenced this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and §§ 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 and 794 *et seq.* On November 30, 2006, the defendant moved for summary judgment. On March 28, 2007, Magistrate Judge Robert S. Carr ("Magistrate Judge Carr") issued a report analyzing the issues and recommending that the Court grant the defendant's motion for summary judgment. On April 17, 2007, the plaintiff objected to the report and recommendation.

This Court is charged with making a *de novo* determination of any portions of the magistrate judge's recommendation to which specific objection is made. 28 U.S.C. § 636(b). The Court evaluates the evidence without granting any deference to the magistrate judge's findings and conclusions. Matthews v. Weber, 423 U.S. 261, 270-71 (1976). The final decision is made by the Court based upon the actual record, not merely the magistrate judge's reported findings. Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985). The Court may accept, reject, or



modify, in whole or in part, the report and recommendation, or recommit the matter with instructions. 28 U.S.C. §636(b)(1). After a full review of the record and pertinent case law, the Court adopts the report and recommendation and grants summary judgment to the defendant.

I. Background

From 1981 through April 2000, the plaintiff was employed as a mailhandler, grade level 4,[1] at the Charleston, South Carolina Processing and Distribution Center ("P&DC"). As a mailhandler, the plaintiff's job duties included loading and offloading trucks, working equipment, performing distribution of mail that required no scheme, canceling mail, working damaged mail, facing letters, and transporting mail.

On February 10, 2000, a female co-worker kicked the plaintiff in the buttocks, which caused lower back pain and tenderness over the right buttock. Consequently, the co-worker was placed on administrative leave. After the co-worker's temporary removal from the P&DC, other employees harassed and humiliated the plaintiff by refraining from speaking with him, making angry faces, avoiding contact, and making threats. The plaintiff claims that because the supervisors at the facility did nothing about these actions, he became frightened for his life. When the co-worker who assaulted the plaintiff returned to the P&DC, the plaintiff's relationships with his co-workers deteriorated even further until he left the P&DC facility in April 2000. In April 2000, after the plaintiff left the P&DC facility, Dr. John Abbess, the plaintiff's physician, admitted him to an outpatient mental health program where he diagnosed the plaintiff with the psychological disabilities of post-traumatic stress disorder, anxiety, and

---

[1] "Level 4" was Mr. Prioleau's pay grade, and "mailhandler" was the craft in which he was working.



depression.

The plaintiff received workers' compensation payments from the Office of Workers Compensation, Department of Labor ("OWCP"), which administers the Federal Employee's Compensation Act ("FECA"), from February 10, 2000, through September 9, 2000, based upon the psychological disability diagnosed by Dr. Abbess from being kicked in the buttocks. The plaintiff continues to receive regular FECA payments.[2]

In August 2000, the plaintiff was assigned to limited duty work performing janitorial duties at the East Bay Station in Charleston, South Carolina ("East Bay Station"). Shortly thereafter, on September 6, 2000, the plaintiff fell off of a dock at the East Bay Station and injured himself. Dr. Shoemaker, the plaintiff's treating physician, instructed him not to reach above his shoulder. After the fall at the loading dock, the plaintiff made another OWCP claim for that resulting injury and was paid under that claim from September 2000 until July 14, 2001, when his doctor released him to return to work, with some restrictions.

On October 10, 2000, the defendant made the plaintiff a limited duty offer to be a modified mailhandler at the East Bay Station. In that position, the plaintiff's tasks would involve the following: (1) making or assisting in making minor maintenance repairs to buildings and equipment; (2) performing general laboring duties such as uncrating and assembling furniture and fixtures using bolts and screws for assembly, loading and unloading supplies and equipment; and (3) performing janitorial duties such as cleaning, scrubbing, waxing, and polishing floors;

---

[2] The OWCP's FECA payments were initially 75% of the plaintiff's regular Postal Service pay. His FECA payments were adjusted in early 2006 to account for the OWCP's estimate of his earning capability in the open job market, given his medical restrictions, and he is now receiving 75% of the difference between his pre-accident income and his earning potential in the private economy as estimated by OWCP.



washing walls and ceilings; dusting furniture and fixtures; cleaning hardware and toilet fixtures; washing windows, caring for lawns and shrubs; cleaning sidewalks and driveways; and removing ashes, snow, and ice. On October 11, 2000, the plaintiff declined the modified mailhandler job offer because he believed it would violate the physician's medical restriction that he not reach above his shoulder.

Thereafter, Peter Hay ("Hay"), a maintenance supervisor, worked with the plaintiff in an effort to find him a suitable position. Hay and the plaintiff discussed proposals for administrative work at the P&DC, explored the option of assigning the plaintiff to work damaged mail at the James Island station, and considered creating a position for the plaintiff at the Air Cargo Facility in North Charleston. None of these options proved satisfactory for the plaintiff either because of the jobs' locations or his physical restraints.

On March 20, 2001, the plaintiff underwent a Functional Capacity Assessment at Charleston Physical Therapy. The Physical Therapist and Exercise Physiologist who conducted the assessment found that the plaintiff tested out at the sedentary duty work classification in all of his lifts. The results included "limited lumbar, cervical, and bilateral shoulder range of motion; generalized lower extremity and cervical weakness while the back extensor, right hip abductor, right foot dorsiflexor, right foot inversions and eversion, and cervical rotation were significantly weak, and limitations on lifting." (Compl. ¶ 14.) On March 22, 2001, Dr. John Johnson noted that the disability was permanent and released the plaintiff to work full-time with a restriction to not lift over 10 pounds.

On March 29, 2001, the defendant offered the plaintiff a modified mailhandler position at its post office in Mount Pleasant, South Carolina. That position included performing janitorial



duties such as cleaning, scrubbing, waxing, and polishing; sponge washing walls, dusting furniture and fixtures; cleaning hardware and toilet fixtures; washing windows, policing lawns and grounds; cleaning sidewalks and driveways; and stocking supplies on shelves. (Compl.¶ 15.) The plaintiff rejected the job offer in Mount Pleasant for several reasons: (1) Mount Pleasant is outside the acceptable vicinity for the plaintiff, and he would lose his seniority in Charleston and therefore be limited to a part-time flexible position in Charleston; (2) the fiancé of the woman who assaulted him lived in that area; and (3) the position was the same position that he had been offered previously and would violate the medical restrictions on his employment. After the plaintiff refused the job offer, a supervisory claims examiner with the OWCP reviewed the plaintiff's reasons for refusing the Mount Pleasant position and found his reasons acceptable.

On August 15, 2001, the OWCP directed the defendant to make the plaintiff another offer but did not indicate why the previous Mount Pleasant job was unacceptable. Patricia Bradshaw, USPS Relations Specialist, sought clarification from OWCP by inquiring into what part of the last modified position offered was unacceptable. The defendant informed the plaintiff that until OWCP explained to the defendant in detail what specifically needed to be changed in its Mount Pleasant job offer, the defendant would not issue another job offer. The USPS did not receive a response from the OWCP and made no further job offers to the plaintiff.

On August 23, 2001, the plaintiff filed a formal administrative complaint alleging that the USPS had discriminated against him on the basis of race, disability, and reprisal for his prior complaints to the Equal Employment Opportunity Office. The plaintiff requested a hearing before an administrative law judge ("ALJ").

Following the hearing, the ALJ issued a decision finding that the agency discriminated

against the plaintiff on the basis of disability when it ceased engagement in the interactive process. The ALJ found no discrimination on the basis of race or retaliation. On May 9, 2005, the Office of Federal Operations at the EEOC overturned the ALJ's decision and found that the plaintiff was not a qualified individual with a disability under 29 C.F.R. § 1630.2(m) and that the plaintiff had not satisfied his burden under 29 C.F.R. § 1614.203(g) when he failed to establish that had the agency conducted a broader or more thorough search, it would have found a vacant, funded position to which he could have been reassigned.[3]

II. Summary Judgment Standard

When a party has moved for summary judgment, the judgment sought shall be rendered forthwith if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). An issue of such material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine issue has been raised, the court must construe all

---

[3] See Prioleau v. Potter, EEOC Appeal No. 07A40021, 2005 WL 1130135, *5 (May 9, 2005) (stating "29 C.F.R. 614.203(g) places the evidentiary burden on the complainant to establish by a preponderance of the evidence that there were vacancies during the relevant time period into which he could have been reassigned.").


inferences and ambiguities against the movant and in favor of the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

III. Plaintiff's Objections

The plaintiff's objections to Magistrate Judge Carr's report and recommendation are as follows: 1) the defendant commenced the interactive process based upon its demonstrated capacity to develop a position to accommodate the plaintiff's disability; 2) once the defendant commenced the interactive process, the defendant could not terminate the process until it had determined that no position could be developed, even if outside the plaintiff's pay grade level 4, that would accommodate the plaintiff's disability; 3) the defendant terminated the interactive process solely because it did not receive a response from OWCP and not because there was no job available or because no job could be created to reasonably accommodate the plaintiff's disability; and 4) the defendant had the ability to accommodate the plaintiff's disability without resorting to a scheduled position because the defendant created the modified mailhandler position at the East Bay Station. These objections are each discussed in turn below.

A. Commencement of the Interactive Process

The plaintiff asserts that the defendant commenced the interactive process based upon its demonstrated capacity to develop a position to accommodate the plaintiff's disability. This objection is without merit. The record shows that the defendant unsuccessfully attempted to create various satisfactory positions for the plaintiff and that the defendant was unable to develop a position to accommodate the plaintiff even after a prolonged interactive process.

The facts regarding the jobs offered to the plaintiff are not disputed. The management at the East Bay Station offered the plaintiff a temporary modified mailhandler position. After the

plaintiff refused that position due to his medical restrictions, the Supervisor of Maintenance at the East Bay Station attempted to locate another suitable position for the plaintiff but could not find one outside of the North Charleston area where the plaintiff refused to work. Thereafter, the defendant offered the plaintiff a limited duty modified mailhandler position at the Mount Pleasant Post Office. As evidenced by the record, the defendant entered into an interactive process with the plaintiff to reasonably accommodate the plaintiff's needs, but the plaintiff refused all available positions, and there were no other positions available at the plaintiff's same pay level outside of the North Charleston area. Therefore, there is no genuine issue of material fact that the defendant offered all possible available job positions for the plaintiff but was unable to find or create a suitable position.

B. Termination of the Interactive Process if No Possible Accommodation

The plaintiff alleges that once the defendant commenced the interactive process, it could not terminate the process until it had determined that a position could not be developed that would accommodate the plaintiff's disability. The defendant repeatedly tried to accommodate the plaintiff by finding him a suitable position, but the defendant was unable to do so. Both parties agree that the defendant informed the plaintiff that until OWCP explained to the defendant in detail what specifically needed to be changed in its Mount Pleasant job offer, the defendant would not issue another job offer. The record shows that the defendant was unable to find a position to accommodate the plaintiff's disability.

Furthermore, the plaintiff claims that if no level 4 positions were available to accommodate the plaintiff, the defendant had a duty to create a position to accommodate the plaintiff. The plaintiff refused the level 4 positions available to accommodate him, and the



defendant had no duty to create a new position for the plaintiff. Former EEOC Regulation 29 C.F.R. 1614.203(g) applies to the instant case as the standard for assessing liability where the events at issue arose before June 20, 2002. The regulation states:

> Reassignment. When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same grade or level, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program.

29 C.F.R. § 1614.203(g) (2001).

According to the regulation in effect, the defendant was only required to consider positions for the plaintiff within the same grade or level of his previous employment. The defendant could potentially have created a rehabilitation level 4 clerk position for the plaintiff wherever there were level 4 clerk duties to be performed. The P&DC was the only location within plaintiff's commute area where level 4 clerk duties were available, but the plaintiff refused to work there. The other clerk positions outside the P&DC were level 5 and 6, which would require promoting the plaintiff to place him in any of those positions. The defendant "is not required to reassign a disabled person to a vacant position unless the disabled employee is qualified for that position." Riley v. Weyerhaeuser Paper Co., 898 F.Supp. 324, 327 (W.D.N.C. 1995). The defendant does not have a duty to promote the plaintiff in order to accommodate the plaintiff's disability and does not have the ability or duty to create a position for the plaintiff. Therefore, the defendant's objection is without merit.

C. Reason for Termination of the Interactive Process

The plaintiff alleges that the defendant terminated the interactive process solely because it did not receive a response from OWCP and not because there was no job available or because no job could be created to reasonably accommodate the plaintiff's disability. However, nothing in the record supports the plaintiff's allegations.

The defendant entered into a prolonged interactive process with the plaintiff to find or restructure a job for him. On August 15, 2001, after unsuccessfully attempting to create several jobs for the plaintiff, USPS Human Relations Specialist, Pat Bradshaw, sought clarification from the OWCP as to what changes needed to be made to the job position by asking what part of the last modified position offered was unacceptable. The USPS did not receive a response from the OWCP and made no further job offers to the plaintiff. Through their inquiry, USPS was attempting to accommodate the plaintiff after several failed attempts at job restructuring.

As previously discussed, there were no jobs available at the plaintiff's pay grade and no job could be created outside of the North Charleston area to accommodate the plaintiff's disability. Therefore, nothing in the record shows that the defendant terminated the interactive process solely because it did not receive a response from the OWCP.

D. Defendant's Ability to Accommodate Plaintiff's Disability

The plaintiff alleges that the defendant had the ability to accommodate the plaintiff's disability without resorting to a scheduled position because the defendant created the modified mailhandler position at the East Bay Station and because the defendant interacted with the plaintiff in order to accommodate the plaintiff's disability.

Although the defendant created the modified mailhandler position at the East Bay Station, the plaintiff declined that job offer because he believed it would violate the medical restriction



that he not reach above his shoulder. As discussed previously, the record shows that the defendant was unable to create any job positions for which the plaintiff was qualified and which satisfied his medical restrictions.

This Court has reviewed the entire record and agrees with Magistrate Judge Carr's conclusions. No genuine issue of material fact exists in this case. Therefore, the Court grants the defendant's motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

September 7, 2007
Charleston, South Carolina